**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | : | |
| JOSE RAMOS, | : | **Hon. William J. Martini** |
| | : | |
| Petitioner, | : | Civil No. 07-2719 (WJM) |
| | : | |
| v. | : | |
| | : | |
| MICHELLE RICCI, et al., | : | **OPINION** |
| | : | |
| Respondents. | : | |
| | : | |

**APPEARANCES**:

      JOSE RAMOS, #590522B
      New Jersey State Prison
      P.O. Box 861
      Trenton, New Jersey  08625
      Petitioner Pro Se

      SUSAN B. GYSS, Assistant Prosecutor
      EDWARD J. DE FAZIO, HUDSON COUNTY PROSECUTOR
      Administration Building
      595 Newark Avenue
      Jersey City, New Jersey 07306
      Attorneys for Respondents

**MARTINI**, District Judge

      Jose Ramos filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254

challenging a judgment in the Superior Court of New Jersey, Hudson County, entered May 1,

1996, and amended May 18, 1999, after a jury found him guilty of 14 crimes, including the first

degree murder of his wife, several counts of aggravated assault, attempted murder, terroristic

threats, possession of a gun for an unlawful purpose, and other crimes.  Respondents filed an

Answer, and Petitioner filed a Reply.  For the reasons expressed below, this Court will dismiss

the Petition with prejudice and decline to issue a certificate of appealability.

## I.  BACKGROUND

On August 26, 1992, a grand jury in Hudson County, New Jersey, returned a 16-count indictment against Petitioner, charging Petitioner with his wife's murder and other crimes committed against his wife and children on April 10, 1992 (counts 10 through 16), and May 20, 1992 (counts one through nine).  On March 24, 1993, the Superior Court of New Jersey, Law Division, denied Petitioner's motion to sever counts one through nine from counts 10 through 16. A jury convicted Petitioner on 14 counts.  (He was acquitted on two counts of aggravated assault regarding the May 20, 1992, incident.)  On May 1, 1996, the Law Division sentenced Petitioner to an aggregate sentence of life imprisonment plus 23 years, with a 41.5 year period of parole ineligibility.

Petitioner appealed.  On March 19, 1998, the Appellate Division of the Superior Court of New Jersey affirmed the conviction, vacated the sentence and remanded for resentencing.  See State v. Ramos, Docket No. A-5598-95T4 slip op. (N.J. Super., App. Div., Mar. 19, 1998).  On June 17, 1998, the New Jersey Supreme Court denied certification.  See State v. Ramos, 156 N.J. 384 (1998) (table).

On May 18, 1999, the Law Division resentenced Petitioner to life imprisonment plus 20 years, with 40 years of parole ineligibility.  See State v. Ramos, Docket No. A-4731-01T4 slip op., p. 2 (N.J. Super., App. Div., April 8, 2003).  Petitioner appealed the sentence, and by order filed January 18, 2001, the Appellate Division affirmed.  Id.  ("Having considered the record and argument of counsel, and it appearing that the issues on appeal relate solely to the sentence imposed, we are satisfied that the sentence is not manifestly excessive or unduly punitive and does not constitute an abuse of discretion.")

On February 21, 2001, Petitioner filed his first petition for post-conviction relief in the Law Division. By order filed November 6, 2001, the Law Division denied post-conviction relief without an evidentiary hearing. See State v. Ramos, Indictment No. 1533-08-92 order (N.J. Super., Law Div., Nov. 6, 2001). Petitioner appealed. In an opinion filed April 8, 2003, the Appellate Division affirmed the order denying post-conviction relief. See State v. Ramos, Docket No. A-4731-01T4 slip op., p. 2 (N.J. Super., App. Div., April 8, 2003). On July 14, 2003, the New Jersey Supreme Court denied certification. See State v. Ramos, 177 N.J. 494 (2003) (table).

On October 14, 2003, Petitioner filed a second petition for post-conviction relief in the Law Division. Superior Court Judge Peter J. Vazquez, Law Division, denied post-conviction relief by order filed November 28, 2005. Petitioner appealed, and in an opinion filed February 20, 2007, the Appellate Division affirmed the order denying post-conviction relief on the merits. See State v. Ramos, Docket No. A-2837-05T4 slip op. , 2007 WL 505935 (N.J. Super., App. Div., Feb. 20, 2007). The New Jersey Supreme Court denied certification by order filed April 4, 2007. See State v. Ramos, 190 N.J. 393 (2007) (table).

Petitioner executed the Petition which is now before this Court on May 7, 2007, and forwarded it to the Clerk by letter dated June 5, 2007. The Clerk received the Petition on June 11, 2007. This Court notified Petitioner of rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), and Petitioner elected to proceed with the Petition as his all-inclusive Petition. The Petition raises the following grounds:

> Ground One: PETITIONER IS ENTITLED TO HABEAS CORPUS RELIEF BECAUSE THE TRIAL COURT ERRED IN DENYING PETITIONER'S MOTION TO SEVER COUNTS ONE THROUGH NINE OF THE INDICTMENT.

3

Ground Two: PETITIONER IS ENTITLED TO HABEAS
CORPUS RELIEF BECAUSE THE COURT'S JURY
INSTRUCTION ON DIMINISH[ED] CAPACITY PREJUDICED
THE PETITIONER.

> A. THE COURT'S CHARGE UNCONSTITUTIONALLY
> PLACED THE BURDEN OF PROOF ON PETITIONER
> BY REQUIRING A SHOWING THAT DR. COOKE WAS
> CREDIBLE BEFORE CONSIDERING WHETHER
> DIMINISH[ED] CAPACITY WAS IN THE CASE.

> B. THE CHARGE PRECLUDED A CONVICTION ON
> MANSLAUGHTER BECAUSE IT DID NOT MAKE
> CLEAR THAT THE JURY COULD FIND THAT
> PETITIONER, EVEN IF CAPABLE OF FORMING A
> PURPOSEFUL OR KNOWING MENTAL STATE, WAS
> STILL CAPABLE OF ACTING RECKLESSLY.

> C. THE CHARGE FAILED TO RELATE THE LAWS TO
> THE FACTS OF THIS CASE.

Ground Three:   PETITIONER IS ENTITLED TO HABEAS
CORPUS RELIEF BECAUSE THE PROSECUTOR'S
COMMENTS MADE IN SUMMATION DEPRIVED
PETITIONER OF A FAIR TRIAL.

Ground Four: PETITIONER IS ENTITLED TO HABEAS RELIEF
BECAUSE HE WAS DENIED EFFECTIVE ASSISTANCE OF
COUNSEL DURING HIS TRIAL AND DURING APPELLATE
PROCEEDINGS.

(Pet. ¶ 12.A. to 12.D.)

Respondents filed an Answer, asserting that the Petition should be denied as time barred

and on the merits.[1]  Petitioner filed a Reply to the Answer.

_____

[1] Respondents' contention that the Petition is time barred is without merit.  Respondents
base this affirmative defense on the premise that the conviction became final on September 16,
1998, which is 90 days after the New Jersey Supreme Court denied certification on direct review.
However, Petitioner's conviction was not final at that time since the Appellate Division had
remanded for resentencing.  The Law Division resentenced Petitioner on May 18, 1999, and the
Appellate Division affirmed this sentence on January 18, 2001.  Petitioner's conviction became

(continued...)

## II.  STANDARD OF REVIEW

A habeas corpus petition must meet "heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)).  The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested.  See 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v. Phillips, 455 U.S. 209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable."  Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).  Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged

---

[1](...continued)
final when the time to file a petition for certification in the New Jersey Supreme Court expired 45 days later.

conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[2]  Nor may the court recharacterize a ground asserted under state law into a federal constitutional claim.[3]  "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim."  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

The AEDPA limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless

---

[2] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to  consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[3] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

adjudication of the claim either involved an unreasonable application of clearly established

federal law, or was based on unreasonable determination of the facts in light of the evidence

before the state court.  See 28 U.S.C. § 2254(d).  Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus . . . shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State Court proceedings unless the adjudication of the
> claim -
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal Law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated

on the merits in State Court proceedings."  28 U.S.C. § 2254(d).  "An 'adjudication on the

merits' has a well settled meaning: a decision finally resolving the parties' claims, with res

judicata effect, that is based on the substance of the claim advanced, rather than on a procedural,

or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal

quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374

(2005); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006) ("Here, because the PCRA

appellate court found that Vargas was not willing to testify at the guilt phase of Rolan's trial, its

decision to deny habeas relief on that basis constituted an adjudication on the merits").  A state

court may render an adjudication on the merits of a federal claim by rejecting the claim without

any discussion whatsoever.  See Rompilla, 355 F.3d at 247.  On the other hand, "[i]f the

petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. §

2254(d) does not apply, and federal courts undertake a de novo review of the claim."  <u>Rolan</u>, 445 F. 3d at 678.

As the New Jersey courts adjudicated petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  <u>See</u> 28 U.S.C. § 2254(d). Accordingly, this Court may not grant habeas relief to petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, <u>see</u> 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding and petitioner is in custody in violation of the Constitution or laws or treaties of the United States, <u>see</u> 28 U.S.C. § 2254(a), (d)(2).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  <u>Williams</u>, 529 U.S. at 412; <u>see also</u> <u>Carey v. Musladin</u>, 127 S. Ct. 649, 653 (2006) ("federal habeas relief may be granted here if the California Court of Appeal's decision was contrary to or involved an unreasonable application of this Court's applicable holdings").  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme]

Court and nevertheless arrives at a [different] result." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06

(2000).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from th[e Supreme]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

<u>Williams</u>, 529 U.S. at 413.  For example, in <u>Carey v. Musladin</u>, the court reversed the granting of

a writ, holding that where "[n]o holding of this Court required the California Court of Appeal to

apply the test of <u>Williams</u> and <u>Flynn</u> to the spectators' conduct . . . , the state court's decision was

not contrary to or an unreasonable application of clearly established federal law."  <u>Carey</u>, 127 S.

Ct. at 654.[4]  In addition, whether a state court's application of federal law is "unreasonable" must

be judged objectively; an application may be incorrect, but still not unreasonable.[5]  <u>Id</u>. at 409-10;

<u>see also</u> <u>Thomas v. Varner</u>, 428 F. 3d 491, 497 (3d Cir. 2005).  Thus, "[t]he federal *habeas* court

should not grant the petition unless the state court decision, evaluated objectively and on the

merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court

precedent."  <u>Outten v. Kearney</u>, 464 F. 3d 401, 414 (3d Cir. 2006) (citation and internal quotation

marks omitted).

---

[4] <u>See also</u> <u>Wright v. Van Patten</u>, 128 S. Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal quotation marks omitted).

[5] "[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent."  <u>Marshall v. Hendricks</u>, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal quotation marks omitted).

## III.  DISCUSSION

A.  Severance

  In Ground One, Petitioner asserts that the trial court erred in denying Petitioner's motion

to sever counts one through nine of the indictment.  As factual support, Petitioner asserts:

> Based on events that occurred on April 10, 1992, Petitioner was
> arrested and subsequently charged with attempted murder and
> terroristic threats upon the victim.  A domestic violence restraining
> [order] was issued.  The victim subsequently died from injuries she
> received from events that occurred on May 20, 1992.  At
> Petitioner's trial evidence of the April 10, 1992, events were used
> to secure convictions of events that occurred on May 20, 1992.
> Petitioner argued that evidence of the April 10, 1992, events and
> the contempt of domestic violence restraining order should have
> been severed.

(Pet., ¶ 12.A., Supporting Facts.)

  Respondents argue that Petitioner is not entitled to habeas relief on Ground One because

severance is a question of state law.  In his Reply, Petitioner argues that the trial court had the

discretion under New Jersey Rules of Evidence 403 and 404 to limit evidence of other crimes to

avoid prejudice to the defendant.  Petitioner further maintains that the failure to sever the counts

relating the April domestic violence incident from the counts relating to the May incident

prejudiced him and thereby denied him due process.

  Petitioner presented Ground One to the Appellate Division on direct review.  The

Appellate Division rejected the claim, finding that joinder was proper because the two incidents

were connected and there was no undue prejudice to Petitioner.  Specifically, the Appellate

Division found:

> Here the April 20 incident was clearly connected to the events of
> May 20, 1992.  On April 20, after learning of Patricia's alleged
> affair, the defendant threatened and injured her with a shotgun in

10

front of the couple's children.  He was arrested on that date and remained in jail until May 16, 1992.  Four days later, he shot and killed his wife before their children.  The events of April 20 were evidence of defendant's jealously and were material to the State's effort to show defendant's motive for the murder.  See R. 3:7-6.

Further, there was no undue prejudice to the defendant because the April 20 events would have been admissible under N.J.R.E. 404(b) in a separate trial of the May 20 murder.  The earlier events were evidence of a motive, intent, or plan on the part of the defendant.  Moreover . . . , defendant did not deny that he had committed the murder.  Rather, he simply argued that he did not possess the requisite mental state because of a mental disease or defect.  Thus, we find no abuse of discretion in the denial of severance.

State v. Ramos, Docket No. A-5598-95T4 slip op., p. 11 (N.J. Super., App. Div., Mar. 19, 1998).

The Supreme Court has observed that "[i]mproper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."  United States v. Lane, 474 U.S. 438, 446 n.8 (1986).  The Supreme Court explained in Zafiro v. United States, 506 U.S. 532 (1993), that "an important element of a fair trial is that a jury consider *only* relevant and competent evidence bearing on the issue of guilt or innocence [but] a fair trial does not include the right to exclude relevant and competent evidence."  Id. at 540 (citation and internal quotation marks omitted).

In this case, the New Jersey courts' ruling that the joinder of the charges relating to the April incident of domestic violence with those relating to the May incident did not "result[] in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial" Lane, 474 U.S. at 446, was not contrary to, or an unreasonable application of Supreme Court precedent.  See Herring v. Meachum, 11 F.3d 374, 377-78 (2nd Cir. 1993) ("where a defendant is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the

potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded during the joint trial"); <u>United States ex rel. Laws v. Yeager</u>, 448 F.2d 74, 82 (3d Cir. 1971); <u>United States ex rel. Evans v. Follette</u>, 364 F.2d 305 (2nd Cir. 1966).

B.  Instructions

In Ground Two, Petitioner asserts that the jury instructions unconstitutionally placed the burden of proof on Petitioner to show the credibility of his expert witness, precluded a conviction for manslaughter, and failed to relate the law to the facts.  As factual support, Petitioner states:

> The petitioner had presented a diminish[ed] capacity defense and as such after giving its charge on intoxication, the court moved on to diminish[ed] capacity.  The court stated that there was evidence in the case that petitioner suffered from a mental disease or defect and that evidence may be considered in determining whether or not the State has proved beyond a reasonable doubt the mental states required.  The court then told the jury that since Dr. Cooke based his opinion that petitioner's brain damage was due to an injury caused by a beating as related to him by petitioner the jury might conclude that the injury occurred exactly in the manner that petitioner told Dr. Cooke.

> Petitioner contends the instruction given in this case unconstitutionally shifted the burden of proving every element of the offense, from the state to petitioner when the court instructed the jury that it first had to find the expert testimony credible.

(Pet. ¶ 12.B., Supporting Facts.)

Petitioner presented Ground Two on direct appeal, and the Appellate Division rejected the claim as follows:

> Clear and correct jury charges are essential to a fair trial and failure to provide them may constitute plain error . . . .  The charge as a whole must be considered to determine if the charge correctly stated the law . . . .  Nevertheless, incorrect jury instructions are poor candidates for rehabilitation under the harmless error rule . . .

Applying the above standards to the case at bar, we find no error in the jury charge that was clearly capable of producing an unjust result.  First, defendant attacks the diminished capacity charge on the grounds that it placed the burden of proof on him.  Diminished capacity is a "failure of proof" defense.  That is, evidence of defendant's mental illness or defect serves to negate the mens rea element of the crime . . . .  To be sure, the diminished capacity jury charge may not place the burden of proving diminished capacity on the defendant . . . Humanik v. Beyer, 871 F. 2d 432 (3d Cir. 1989) . . .

Here, contrary to defendant's assertions, the trial judge did not shift the burden of proof.  The trial judge charged in part:

> Also, there is evidence alleging that the Defendant suffered from a mental disease or defect has been produced through the testimony of Dr. Cooke.  You may consider that evidence in determining whether or not the State has proved beyond a reasonable doubt that Jose Ramos had the mental state or states of purposeful and/or knowing, which are the elements in the first question of murder, and the second question of passion provocation manslaughter, and some additional ones that we will discuss later as I have charged you on the various counts.

> I told you, as part of the burden of proof, the State is required to prove beyond a reasonable doubt the requisite mental state for that particular crime, and as to certain counts, evidence has been produced alleging that Defendant suffered from a mental disease or defect.  You may consider that evidence in determining whether or not the State has proven beyond a reasonable doubt the mental states required for those counts . . . .

> Of course, as to every charge, the State must prove each and every element of the crime including the required mental state . . . beyond a reasonable doubt.  More specifically, you may consider this evidence of mental disease or defect on the State's obligation to prove purposeful or knowing conduct with respect to the murder charge and whether the Defendant purposely or knowingly caused the death

13

of Patricia Ramos, either with or without acting in
the heat of passion.

The read as a whole instructed the jury that the State carried the
burden of proof on each element of the crimes charged and that
burden never shifted.

Defendant further claims that the jury charge incorrectly limited
Dr. Cooke's testimony.  We reject this argument as being without
merit.  The charge addressed the hearsay nature of the expert's
opinion . . . .  The judge's instructions were consistent with State v.
Burris, 298 N.J. Super., 505 (App. Div.), certif. denied, 152 N.J.
187 (1997).  In Burris, we stated that "[expert] testimony should be
circumscribed by an appropriate limiting charge by the trial court
to the effect that it should not be considered by the jury as
substantive evidence relating to the question of guilt or innocence
of the accused, but only as evidence tending to support the ultimate
expert conclusion of the psychiatrist . . . .  Consequently we find no
reversible error in the judge's instructions regarding Dr. Cooke's
testimony.

Defendant also argues that the judge's charge was inadequate
because it did not make clear that the jury could find that
defendant, even if incapable of forming a purposeful or knowing
mental state, was still capable of acting recklessly.  We disagree.

The judge instructed the jury to consider each count separately.
Defendant was acquitted of the more serious charge, purposely or
knowingly causing bodily injury to his son with a deadly weapon
(count two), but was convicted of the lesser offense of recklessly
causing bodily injury to his son with a deadly weapon (count
three).  Thus, the jury understood the application of the diminished
capacity defense to the manslaughter charge because of its decision
regarding the offenses committed against defendant's son.  As
noted above, the jury was instructed that the diminished capacity
and intoxication defense relating to the above offense required a
purposeful or knowing mental state and that the State had the
burden of proving the element of the offenses beyond a reasonable
doubt.  The jury instructions did not preclude the manslaughter
verdict.

Ramos, Docket No. A-5598-95T4 slip op., pp. 12-16 (citations and internal quotation marks

omitted).

14

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  As the Third Circuit explained,

> In considering whether this case involves a claim of error under the Constitution, laws, or treaties of the United States, it is critical to remember that the Supreme Court has made it clear that the states define the elements of state offenses. Accordingly, while there may be constitutionally required minimum criteria which must be met for conduct to constitute a state criminal offense, in general there is no constitutional reason why a state offense must include particular elements. *See McMillan v. Pennsylvania,* 477 U.S. 79, 84-86, 106 S.Ct. 2411, 2415-16, 91 L.Ed.2d 67 (1986).
>
> It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct understate law with respect to the elements of an offense and defenses to it.

Johnson, 117 F.3d at 110.

In the first part of Ground Two, Petitioner asserts that the jury instructions unconstitutionally placed the burden of proof on Petitioner to show the credibility of his expert

witness.  The Due Process Clause of the Fourteenth Amendment requires proof beyond a reasonable doubt of every fact necessary to constitute the elements of the crime.  See In re Winship, 397 U.S. 358 (1970).  In Humanik v. Beyer, 871 F. 2d 432 (3d Cir. 1989), the United States Court of Appeals for the Third Circuit granted habeas relief to a New Jersey prisoner because the instructions on diminished capacity in that case placed a burden of proof of an element of the offense (that the defendant acted purposely or knowingly) on the defendant.  Id. p. 442-43.

As set forth above, the Appellate Division found in this case that the instructions relating to diminished capacity did not include a Winship issue because, unlike the situation in Humanik, the trial court instructed the jury that the state had to prove the element of purposeful or knowing intent beyond a reasonable doubt.  See Johnson v. Rosemeyer, 117 F. 3d 104, 111(3d Cir. 1997). Because the instructions did not provide that Petitioner had the burden of proving diminished capacity, the State courts' rejection of this claim was not contrary to, or an unreasonable application of, Winship and its progeny.

In the second part of Ground Two, Petitioner contends that the instructions unconstitutionally precluded the jury from finding him guilty of the lesser included offense of reckless manslaughter.  In rejecting his claim, the Appellate Division noted that the jury had acquitted Petitioner of purposely or knowingly causing bodily injury to his son in count two, but convicted him of the lesser offense of recklessly causing bodily injury to his son with a deadly weapon in count three.  The Appellate Division reasoned that this showed that the jury understood the distinction between a purposeful or knowing state of mind and a reckless one. Specifically, the Appellate Division reasoned that "the jury understood the application of the

16

diminished capacity defense to the manslaughter charge because of its decision regarding the offenses committed against defendant's son [and t]he jury instructions did not preclude a manslaughter verdict."  <u>Ramos</u>, Docket No. A5598-95T4 slip. op., p. 16.  This Court finds that the State courts' rejection of this claim was not contrary to, or an unreasonable application of Supreme Court precedent.

In the third subpart of Ground Two, Petitioner contends that the instructions were unconstitutional because the judge did not specifically relate the law to the facts of the case. However, Supreme Court precedent does not require the instructions to relate the law to the facts. <u>See</u> <u>Montana v. Egelhoff</u>, 518 U.S. 37 (1996); <u>Goodwin v. Johnson</u>, 132 F.3d 162, 191 (5th Cir. 1997).  And "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."  <u>Estelle</u>, 502 U.S. at 71-72; <u>see also</u> <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal rights and may not obtain habeas relief").

To summarize, Petitioner does not point to a federal requirement that jury instructions must include the cited provisions, nor does he show that the instructions deprived him of a defense which federal law provided to him.  <u>Id.</u> at 111.  Moreover, Petitioner cites no Supreme Court authority for the proposition that the jury instructions violated a clearly established federal right.  He is therefore not entitled to habeas relief on Ground Two.

<u>C.  Prosecutorial Misconduct</u>

In Ground Three, Petitioner asserts that the prosecutor's comments in summation deprived him of a fair trial.  As factual support, Petitioner states:

> During summations, the prosecuting attorney made a barrage of
> objectionable comments.  Those comments mischaracterized the

17

law when he told the jury that the fact that a homicide occurred a diminish[ed] capacity defense could not nullify a psychiatric defense.  During his closing arguments the prosecuting attorney fundamentally denigrated the defense by insinuating that the defense was fabricated.

During his summation, the prosecuting attorney launched indefensible attack upon the integrity of the defendant's expert, and asserted that the expert's testimony did not matter.  This conduct was egregious and deprived petitioner of a fundamentally fair trial.

(Pet., ¶ 12.C., Supporting Facts.)

Petitioner presented his prosecutorial misconduct claim to the Appellate Division on

direct appeal.  The Appellate Division rejected the claim as follows:

Defendant next claims prosecutorial misconduct in the summation deprived him of a fair trial.  Specifically, defendant attacks the prosecutor's comments regarding defendant's expert witness, and the handgun which defendant claimed was in Patricia's possession.

*                              *                              *

Here, the prosecutor compared defendant's expert's report to a new car being offered at an inexpensive price.  The Prosecutor commented:

With all due respect to Dr. Cooke, I think that we have to look a little more closely at what he said and what it's based on.  He has a very - Dr. Cooke has a very impressive background, and a very impressive resume.  He came in here, got a nice tan, wearing a nice suit, a very distinguished looking gentleman . . . .  He's essentially, if you will, a professional expert witness.  He should sound good.

Now, I don't know if you ever had this experience, but if you ever . . . go into a used car lot and the salesman comes out and he's real smooth and well-dressed, got a nice smile, beautiful teeth, got a nice tan.  He . . . takes you over to this used car that they have on the lot.  That thing is shining and it's - and the finish is beautiful . . . .  It's spotless and the

18

price is unbelievable.  You were ready to pay much
more for this used car.  The price is unbelievable.
Well, at that point, alarm bells should go off in your
head.  Maybe you better check it out.  Maybe you
ought to check under the hood before you decide to
buy the used car.  The only reason that I say that is
maybe we ought to check under the hood of Dr.
Cooke's report and find out what he's basing it on.
What it amounts to.  Because, ladies and gentlemen,
it may turn out that you check under the hood and
there is an oil leak and the radiator is like swiss
cheese, the fuel injectors are clogged and the
exhaust system is about to fall off.

The prosecutor essentially argued that the expert's report was "too
good to be true."  While the prosecutor's comments regarding Dr.
Cooke's appearance should not h ave been made, we find no
reversible error . . . .  We are satisfied that the challenged
comments by the prosecutor were not so egregious that they
deprived defendant of a fair trial . . .

Defendant also challenges the prosecutor's comments regarding the
production of the handgun on May 20.  However, in defense
counsel's summation, he argued that Patricia had been in
possession of the handgun on the day of her death . . . .  In response
to these comments, the prosecutor replied:

Now, what is [defense counsel's] basis for saying
that Patricia must have had it? . . . .  There is
absolutely no basis for what [defense counsel] is
saying about Patricia having the weapon.  It's his
gun.  Does anybody ever see her with it?  Is there
any testimony at all that anybody ever saw her with
a gun, that she ever told anybody she had a gun?
Just from him.  It's his gun.

Defense counsel objected to the prosecutor's comments at trial and
the trial judge ruled them "fair comment."

A prosecutor's remarks may be harmless if they are only a response
to remarks by opposing counsel . . . .  We are satisfied that the
prosecutor's comments responding to defense counsel's comments
regarding the handgun were fair comment and did not deprive
defendant of a fair trial.

19

State v. Ramos, Docket No. A-5598-95T4 slip op., pp. 16-20.

The Supreme Court has held that "it is not enough that the prosecutors' remarks were undesirable or even universally condemned.  The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  However, the Supreme Court has said that

> [Our] standards reflect a consensus of the profession that the courts must not lose sight of the reality that [a] criminal trial does not unfold like a play with actors following a script. It should come as no surprise that in the heat of argument, counsel do occasionally make remarks that are not justified by the testimony, and which are, or may be, prejudicial to the accused. Nevertheless, a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statement or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.

United States v. Young, 470 U.S. 1, 10 (1985) (citations and internal quotation marks omitted).

Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them." Id. at 642.  The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. See Darden, 477 U.S. at182; Donnelly, 416 U.S. at 644; Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).  As the Supreme Court explained in Darden,

> Under this standard of review, we agree with the reasoning of every court to consider these comments that they did not deprive petitioner of a fair trial. The prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent . . . .  Much of the objectionable content was invited by or was responsive to the opening summation of the

20

> defense. As we explained in <u>United States v. Young</u>, 470 U.S. 1,
> 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the idea of "invited response"
> is used not to excuse improper comments, but to determine their
> effect on the trial as a whole. <u>Id.</u>, at 13.

<u>Darden</u>, 477 U.S. at 181-182 (footnote omitted); <u>see also</u> <u>United States v. Robinson</u>, 485 U.S. 25, 31 (1988).

     In this case, Petitioner contends that the prosecutor's comments during summation mischaracterized the law with respect to diminished capacity, attacked the integrity of Dr. Cooke, and implied that Petitioner's testimony regarding Patricia's possession of the gun was fabricated. As set forth above, the Appellate Division found that these comments did not deprive Petitioner of a fair trial because they did not infect the trial with unfairness as to make the resulting conviction a denial of due process.  This Court concludes that the adjudication of Petitioner's prosecutorial misconduct claim by the New Jersey courts did not result in a decision that was contrary to, or an unreasonable application of Supreme Court holdings.  <u>See</u> <u>Fahy v. Horn</u>, 516 F. 3d 169, 200 (3d Cir. 2008) (prosecutor's argument during summation that sexual abuse can occur in a loving non-blood relationship "was proper and logical when responding to the defense's argument that Fahy could not have raped and murdered Nicky Caserta because he loved her").

D.  Ineffective Assistance of Counsel

     In Ground Four, Petitioner asserts that he was denied the effective assistance of trial and appellate counsel.  As factual support, Petitioner states:

> Petitioner's trial counsel failed to object to the order of the charges
> on the verdict sheet for the events that occurred on May 20, 1992.
> Trial counsel also failed to object to the verdict sheet, because the
> verdict sheet did not permit the jury to consider passion-
> provocation manslaughter, aggravated manslaughter or reckless
> manslaughter unless it first found defendant not guilty of murder.

Trial counsel failed to request an instruction on intent, despite the State's urging that it was Petitioner's intent that was critical to the case.

Trial counsel was ineffective by failing to request that court eight, alleging contempt of a domestic violence restraining order by having contact with the victim on May 20, 1992, be severed from the remaining counts.

Petitioner's trial counsel failed to obtain a neurological expert to examine petitioner and failed to present adequate scien5tific evidence to support petitioner's diminish[ed] capacity defense and failed to interview and or consult with the physicians who had treated him for his head injuries.

Petitioner further argues that he was denied a speedy trial because his attorney labored under a conflict of interest and failed to meet with him to discuss the case and the strategies that would be used at trial.

Petitioner's counsel on his direct appeal failed to argue before the Appellate Division that Petitioner's trial counsel [was] ineffective for failing to raise issue of constitutional dimension on direct appeal.  Petitioner's appellate counsel performed deficiently because he failed to argue issues on constitutional dimension before the Appellate Division on direct appeal.

(Pet. ¶ 12.D., Supporting Facts.)

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland, 466 U.S. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of

reasonableness." Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of

ineffective assistance must identify the acts or omissions of counsel that are alleged not to have

been the result of reasonable professional judgment." Id. at 690.  The court must then determine

whether, in light of all the circumstances at the time, the identified errors were so serious that

they were outside the wide range of professionally competent assistance.  Id.

To satisfy the prejudice prong, the defendant must show that "there is a reasonable

probability that, absent the errors, the factfinder would have had a reasonable doubt respecting

guilt." Id. at 695.  As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness
> claim must consider the totality of the evidence before the judge or
> jury. Some of the factual findings will have been unaffected by the
> errors, and factual findings that were affected will have been
> affected in different ways. Some errors will have had a pervasive
> effect on the inferences to be drawn from the evidence, altering the
> entire evidentiary picture, and some will have had an isolated,
> trivial effect. Moreover, a verdict or conclusion only weakly
> supported by the record is more likely to have been affected by
> errors than one with overwhelming record support. Taking the
> unaffected findings as a given, and taking due account of the effect
> of the errors on the remaining findings, a court making the
> prejudice inquiry must ask if the defendant has met the burden of
> showing that the decision reached would reasonably likely have
> been different absent the errors.

Strickland, 466 U.S. at 695-696.

The Supreme Court instructs that a court need not address both components of an

ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland,

466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, which we expect will often be so, that course should be followed." Id.

(1) Was counsel constitutionally ineffective in failing to object to the verdict sheet?

Petitioner argues that counsel was constitutionally ineffective in failing to object to the order of charges on the verdict sheet (charges relating to the May 20th events preceded those relating to the April incident), and failing to argue that the verdict sheet did not permit the jury to consider manslaughter unless it first found defendant not guilty of murder. Petitioner presented these arguments on appeal from his second petition for post-conviction relief. The Appellate Division rejected these claims as follows:

> Verdict sheets must be clearly written and reflect the jury charge given by the court. A verdict sheet cannot, therefore, foreclose the jury from considering whether passion/provocation should reduce an otherwise purposeful killing from murder to manslaughter. We are satisfied that the harm found in Coyle [119 N.J. 194 (1990)] is absent here when the verdict sheet is considered in light of the court's charge. Rather than foreclosing consideration of the passion/provocation manslaughter charge, the verdict sheet directed the jury to consider the passion/provocation charge, as part of its consideration of the murder charge.

State v. Ramos, Docket No. A-2837-05T4 slip op., p. 17 (N.J. Super., App. Div., Feb. 20, 2007).

The Appellate Division reasoned that Petitioner's trial counsel was not constitutionally deficient in failing to request changes in the verdict sheet because the verdict sheet did not violate New Jersey law. Under these circumstances, this Court finds that the state courts' adjudication of this ineffective assistance of counsel claim was not contrary to, or an unreasonable application of Strickland and its progeny.

(2) Was counsel constitutionally ineffective in failing to request an instruction on intent?

Petitioner argues that, although the jury was charged with respect to a purposeful or knowing state of mind, counsel was ineffective in failing to request a charge instructing the jury to consider whether it was Petitioner's intent to kill his wife. Petitioner presented this ground on

24

appeal from the order denying his second petition for post-conviction relief.  Specifically,

Petitioner relied on State v. Cruz, 163 N.J. 403 (2000), in which the New Jersey Supreme Court

ruled that in order to prove purposeful serious bodily injury, the state must prove it was

defendant's conscious object to cause serious bodily injury that resulted in death, knowing that

the injury created a substantial risk of death and that it was probable that death would result.  The

Appellate Division found that counsel was not constitutionally deficient in failing to request a

Cruz charge because there was no evidentiary basis for such a charge:

> We are satisfied, after reviewing the record from defendant's trial,
> that there would not have been a basis for a Cruz charge even if a
> request had been made.  Defendant shot the victim four times and
> the victim died at the scene.  Prior to the murder, defendant had
> attempted to murder the victim, during the April 10, 1992 incident,
> and the jury found defendant had the intent to kill by convicting
> him of attempted murder.  There are no facts in the record that
> suggest that defendant merely intended to impose serious bodily
> injury that resulted in his wife's death.  Defendant's defense at trial
> did not suggest that this was a serious bodily injury rather than an
> "intent to kill" murder.  Therefore, under the prejudice prong of
> Strickland, we are convinced the verdict would not have been
> different even if the trial judge had given a Cruz intent charge.

State v. Ramos, Docket No. A-2837-05T4 slip op., pp. 21-22.

This Court finds that the state courts' adjudication of this ineffective assistance of counsel

claim was not contrary to, or an unreasonable application of Strickland and its progeny.  See

Carpenter v. Vaughn, 296 F.3d 138, 153 (3d Cir. 2002) (because the availability and adequacy of

the jury instructions were questions of state law, petitioner's trial "attorney cannot have been

ineffective for failing to request an instruction that was unavailable").

(3) Was counsel constitutionally ineffective in failing to move to sever count eight, charging violation of a restraining order, from the remaining counts?

Petitioner argues that counsel constitutionally ineffective in failing to file a second motion to sever, specifically, a motion to sever count eight, charging violation of a restraining order, from the remaining 15 counts.  Petitioner presented this ground on appeal from the order denying his second petition for post-conviction relief.  The Appellate Division rejected the claim on the ground that counsel filed a motion to sever the counts relating to the May incident from those relating to the April incident, which the trial court had properly denied, and a second motion to sever count eight only would have been denied for the same reason.  Specifically, the Appellate Division found:

> The violation of the restraining order was count eight.  Although the motion to sever [filed by counsel] did not specifically seek to sever count eight from the May 20, 1992 murder charge, the reason for the trial court's denial of the motion, the close connection between the events of April 10 and May 20, 1992, is the same. Thus, we are of the view that if a motion for severance of the contempt of domestic violence restraining order charge had been made, it would have been denied for the same reason the court denied the motion to sever the charges relating to the attempted murder from the charges relating to the murder.

State v. Ramos, Docket No. A-2837-05T4 slip op., pp. 18.

As counsel cannot be constitutionally ineffective in failing to file a non-meritorious motion, this Court finds that the state courts' adjudication of this ineffective assistance of counsel claim was not contrary to, or an unreasonable application of Strickland and its progeny.

(4) Was counsel constitutionally ineffective in failing to support the diminished capacity defense by presenting a second expert witness and Petitioner's treating physician?

Petitioner argues that trial counsel was ineffective in failing to present a neurological expert and the physicians who had previously treated Petitioner for head injuries.  Petitioner

26

presented this claim on appeal from the denial of his first petition for post-conviction relief.  The

Appellate Division rejected these arguments for the reasons expressed by the Law Division.  See

State v. Ramos, Docket No. A-4731-01T4 slip op., pp. 3-4 (N.J. Super., App. Div., April 8,

2003).  The Law Division rejected this claim, finding that the additional testimony would have

been cumulative, given that the testimony of Petitioner's expert Dr. Cooke:

> This Court holds that additional testimony by a neurological expert
> would have been cumulative; therefore, further testimony on this
> issue would have had no effect on the outcome of the case . . . .
> Dr. Cooke, a forensic psychologist, testified that there was a clear
> pattern of brain damage, which was consistent with a beating
> Petitioner received in 1989.  Dr. Cooke added that after the
> shooting, Petitioner suffered hysterical conversion amnesia.
> Defendant was also found to be suffering from chronic depressive
> disorder, borderline personality disorder, cognitive disorder and
> alcohol and drug abuse syndrome.  More specifically, Dr. Cooke
> diagnosed Defendant as having organic brain damage . . . .  Dr.
> Cooke concluded that Petitioner did not have the requisite mental
> state to commit a knowing or purposeful act.  Despite this
> testimony the jury still found that Petitioner did act knowingly or
> purposely and convicted Petitioner of murder.

State v. Ramos, Ind. No. 1533-08-92 letter opinion, pp. 4-5 (N.J. Super., Law Div., filed Nov. 6,

2001) (citations omitted).

This Court finds that the New Jersey courts' decision that Petitioner was not prejudiced

by counsel's failure to call additional expert witnesses is not contrary to, or an unreasonable

application of Strickland and its progeny.

(5) Was counsel rendered constitutionally ineffective because conflicts of interest
delayed trial, resulting in denial of a speedy trial?

As set forth above, "Petitioner argues that he was denied a speedy trial because his

attorney labored under a conflict of interest and failed to meet with him to discuss the case and

the strategies that would be used at trial."  (Pet., ¶ 12.D., Supporting Facts.)  Petitioner presented

this claim on appeal from the denial of his first petition for post-conviction relief.  The Appellate

Division rejected the claim for the reasons expressed by the Law Division.  See State v. Ramos,

Docket No. A-4731-01T4 slip op., pp. 3-4 (N.J. Super., App. Div., April 8, 2003).  The Law

Division rejected this claim as follows:

> Defendant also submits he waited four years to go to trial and this
> was a violation of his right to a speedy trial.  Conflicts of interest
> among various defense counsels were largely responsible for this
> delay . . . .  A speedy trial claim is governed by a flexible four-part
> balancing analysis established in Barker v. Wingo, 407 U.S. 514
> (1972) . . . .  The four factors to be analyzed are: (1) length of
> delay, (2) the reason for the delay, (3) the defendant's assertion of
> his right, and (4) the prejudice to the defendant resulting from the
> delay.  Here, the record clearly indicates that conflicts of interest
> among various defense counsels were largely responsible for the
> delay and that Petitioner was the main reason for the delay . . . .

State v. Ramos, Ind. No. 1533-08-92 letter opinion, pp. 6-7 (N.J. Super., Law Div., filed Nov. 6,

2001).

In Reed v. Farley, 512 U.S. 339, 352 (1994), the Supreme Court determined that the

Court of Appeals for the Seventh Circuit had properly denied relief under § 2254 to a prisoner

asserting that the state court violated the speedy trial provision of Interstate Agreement on

Detainers Act by failing to bring him to trial within 120 days of his arrival in the receiving state.

The Supreme Court determined that "a state court's failure to observe the 120-day rule of IAD

Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the

trial date at the time it was set, and suffered no prejudice attributable to the delayed

commencement."  Id.  In response to Reed's argument that he was entitled to habeas relief

because the IAD's speedy trial provision effectuates the Sixth Amendment guarantee of a speedy

trial, the Court opined that "[a] showing of prejudice is required to establish a violation of the

Sixth Amendment Speedy Trial Clause, and that necessary ingredient is entirely missing here." Id. at 353.

In Barker v. Wingo, 407 U.S. 514, 530 (1972), the Supreme Court adopted a balancing test to determine violation of the Speedy Trial Clause. "We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. The Court noted that "a valid reason, such as a missing witness, should serve to justify appropriate delay." Id. at 531.

In this case, the New Jersey courts rejected the speedy trial claim on the ground that the delay was justified due to conflicts of interest of various defense attorneys. Given this finding, and Petitioner's failure to assert that he was prejudiced by the delay, this Court holds that the New Jersey courts' rejection of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of Barker and its progeny. See Douglas v. Cathel, 456 F. 3d 403 (3d Cir. 2006) (affirming denial of § 2254 petition asserting violation of speedy trial because the state courts' balancing of the Barker v. Wingo factors was not objectively unreasonable).

(6) Was appellate counsel constitutionally ineffective in failing to raise all issues?

Petitioner asserts that counsel on direct appeal was constitutionally ineffective in failing to argue that trial counsel was ineffective and failing to raise all available constitutional issues.

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'"

Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, id. at 396.  The ineffective assistance of counsel standard of Strickland, 466 U.S. at 686, applies to a claim that appellate counsel was ineffective.  See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

Defense counsel has a constitutionally imposed duty to consult with the defendant about whether to appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).  The term "'consult' convey[s] a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  Flores-Ortega at 478. However, "it is a well established principle that counsel decides which issues to pursue on appeal."  Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996).  Appellate counsel is not constitutionally required to raise every nonfrivolous claim requested by the defendant.  See Jones v. Barnes, 463 U.S. 745, 751 (1983).  Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  Smith v. Robbins, 528 U.S. 259, 288 (2000).

Petitioner claims that appellate counsel was constitutionally ineffective in failing to raise all available constitutional claims, including the ineffective assistance of trial counsel.  Because the Supreme Court has determined that appellate counsel is not required to raise every nonfrivolous claim, this Court holds that the adjudication of Petitioner's ineffective assistance of

appellate counsel claim was not contrary to, or an unreasonable application of <u>Strickland</u> and its progeny.  <u>See</u> <u>Buehl v. Vaughn</u>, 166 F.3d 163, 172 (3d Cir. 1999) (rejecting state petitioner's § 2254 claim that right to effective assistance of counsel on direct appeal was violated by appellate counsel's failure to argue that trial counsel had rendered ineffective assistance).

<u>E.  Certificate of Appealability</u>

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition and denies a certificate of appealability.

s/William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**

Dated: <u>October 17, 2008</u>

31